HENRY SADACCA, Respondent, *v.* NEW YORK RAILWAYS COMPANY, Appellant.

First Department, February 7, 1919.

Street railways — negligence — injury while attempting to board car by thrusting hand through glass of door — contributory negligence — evidence.

In an action against a street railway company for personal injuries the plaintiff claimed that while he was attempting to board defendant's car his foot was shoved off the threshold by the closing of the doors, and that in order to protect himself he threw up his hand which went through the glass, severely cutting his wrist, but the conductor and three disinterested witnesses testified in substance that the door had been closed and the car started before plaintiff made any attempt to board the same, and that he drove his fist through the glass of the door either in an attempt to attract the conductor's attention or in a moment of rage.

*Held,* that a judgment in favor of the plaintiff should be set aside and a new trial ordered upon the ground that the verdict was against the weight of the evidence both upon the question of defendant's negligence and plaintiff's freedom from contributory negligence.

CLARKE, P. J., and LAUGHLIN, J., dissented, with memorandum.

APPEAL by the defendant, New York Railways Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 8th day of June, 1918, upon the verdict of a jury for $5,000, and also from an order entered in said clerk's office on the 11th day of June, 1918, denying defendant's motion for a new trial made upon the minutes.

*J. Ralph Hilton* of counsel [*James L. Quackenbush,* attorney], for the appellant.

*Moses Feltenstein* of counsel [*Abraham I. Smolens,* attorney], for the respondent.

MERRELL, J.:

The plaintiff has recovered of the defendant a verdict of $5,000 for personal injuries which he claims to have sustained while attempting to board an east-bound car on Spring street in the city of New York on April 12, 1917.

Plaintiff testified that about noon of that day he had come downtown from his residence on One Hundred and Fourteenth street *via* the subway and had come from the subway at the point where Spring street is crossed by Lafayette street, with a view of boarding an east-bound Spring street car and proceeding thence to Brooklyn. Plaintiff testifies that as he came from the subway exit at Spring street an east-bound car of the defendant was standing just west of Lafayette street with the door open and about seven feet distant from the subway exit. The car was of the storage battery type, having an entrance at the side about the middle of the car. This entrance was closed by a folding door of four sections, the lower portion of the sections being wood paneling, and the upper portion being of glass. The plaintiff testified that he proceeded across the six or seven-foot space between the subway exit and the car standing with its open doors and started to enter, placing his left foot upon the car, but at that moment the folding doors closed, pushing his foot off the car. As he testified: " I put my foot inside to get inside the car. Suddenly the doors closed — suddenly I see the door folding and I put my hand. Q. To protect yourself? A. Well, absolutely, to protect myself. Q. What happened? A. My hand went right through the glass and the car started going, and I pulled my hand out, and all I done is run to the drug store in the corner of Lafayette and Spring Street, I think on the corner, * * *."

Plaintiff testified that the car did not stop, but passed right along.

As to the way the accident happened, a young woman

named Helen Zins was sworn by the plaintiff, and she testified that on the day in question she was seated opposite the entrance door next to the conductor, who, for the purpose of receiving fares, was stationed opposite the door and about four feet distant therefrom. This witness testified that she saw the plaintiff have one foot upon the car, and almost at the same moment the doors closed shoving him out, and that she next saw his hand come right through the glass on the inside of the car; that the car did not stop, but that at the next corner, the distance of a short block, she alighted and went back and found the plaintiff in a nearby dispensary and gave him the number of the car, of which she had made a note.

From plaintiff's own showing it is quite impossible to understand just how the accident could have occurred. Plaintiff testified that as his foot was shoved off the threshold of the car by the outwardly closing folding doors, he threw up his hand for his protection, and that in this way it went through the glass, and that his wrist was severely cut, as the result of which he claims to have lost in a large measure the use of his hand.

The defendant's version of the occurrence was very different than that to which the plaintiff testified, and in which he was in a measure corroborated by the witness Helen Zins. The conductor of the car, who had been in defendant's employ in such capacity for nine years, testified that the car came to a stop on its easterly course on Spring street just before reaching Lafayette street, and that two or three passengers alighted from the car and about the same number boarded the car; that at the Lafayette street crossing a traffic policeman is stationed, and that all cars are compelled to stop at such crossing; that as soon as the traffic officer indicated that the car might proceed the conductor closed the doors and gave the motorman the required signal and the car started; that after the car had proceeded to cross Lafayette street, and after it had gone a few feet, he heard some one rap upon the door; that he looked around and saw the plaintiff running after the car and rapping on the door; that under the rules of the company he was not permitted to open the doors while the car was in motion, and, therefore, proceeded to

cross Lafayette street; that the man kept rapping on the door, and finally put his fist through the glass. Thereupon the conductor signaled the motorman to stop, but, because traffic would be blocked, the car was not brought to a stop until it reached the east side of Lafayette street. The conductor testified as the car stopped he alighted therefrom, opened the door, and looked for the man who had broken the glass, but could see no one. In order to prevent injury to passengers on the car, he removed the broken glass, upon which there was some blood, took the names of some of the passengers who had witnessed the occurrence, and the car then proceeded on its way. The conductor positively denied that the plaintiff had put his foot upon the car as the doors were open, and denied closing the doors when plaintiff was in the act of entering, testifying that at the time he closed the door there was no one there that he could see.

The defendant swore three passengers upon the car, all of them apparently disinterested, and all of whom corroborated the conductor in his version of the occurrence. Defendant first called as a witness Ernest Albert Lommatsch, who testified that he was a wholesale grocery agent and had been employed by the same firm for a period of thirty-seven years. He testified that he was a passenger upon the car in question; that he sat in the rear part of the car, facing toward the south, or in the general direction of the door. Lommatsch testified that when the Spring street car stopped at Lafayette street it took on some passengers and discharged some, and that " Just when the car had started to go on, the door was closed, a man came along, and he had a mad face and wanted to get on, because he could not, and the car went away, and he ran alongside the car to about the middle of Lafayette Street, the center, and the crash came. Q. Where was the crash? A. Well, the door, the panel, the glass panel of the door was broken. Q. Just where? A. About the middle of Center Street — the center of Lafayette Street. Q. Did you see this man as he ran alongside? A. I did see the man running. Q. Positive about that? A. Yes. Q. It has been testified here that this man — that the door was closed on him before the car started? A. It was not. Q. Is that a fact? A. No. Q. Are you positive of it? A. Positive."

The defendant also called one Max Weiss, who testified that he was employed as a cutter and finisher for a clothing concern, and that he, at the time of plaintiff's injury, was a passenger upon the car, being seated in the first seat near the door on the door side of the car. Weiss testified that he saw the plaintiff push his hand through the glass in the door, and at that time the car was moving slowly and had moved about nine or ten feet from the place where it had been at a standstill, on the west side of Lafayette street, and that the door was closed; that the plaintiff ran to the car as it was moving and lifted his fist and jammed it through the glass.

Defendant also swore one William Steurer, who also testified that he was a passenger upon the car when plaintiff was injured, and that the witness was engaged in the live poultry business and had been engaged in business for himself for the past twenty-five years. . Steurer testified that he boarded the east-bound Spring street car at Broadway, and that he sat on a little bench alongside the conductor facing the door; that when the car came to Lafayette street it stopped about a second or two; the door was opened and one or two passengers boarded the car; that thereupon the conductor closed the door, the traffic officer having given the signal to proceed; in substance, that the car had proceeded about fifteen feet when plaintiff knocked in the window with his hand. Steurer further testified that the car was moving when the plaintiff stuck his fist through the glass, and was nearly half across Lafayette street, and that at that time the car was ten or twelve feet from the place where it had been at a standstill.

These three witnesses all corroborate the testimony of defendant's conductor in his version of the accident whereby plaintiff was injured, and the conductor and the three apparently disinterested witnesses tell an entirely different story than that related by the plaintiff.

While, as before stated, the plaintiff did not clearly explain, nor can it be readily understood how, in order to protect himself, he could have driven his fist through the glass of the door, the version of the conductor and the three disinterested witnesses is much more probable. They testify, in substance, that the door had been closed and the car started upon its

journey before the plaintiff made any attempt to board the car. It is very clear that the plaintiff was disappointed in not catching the car before it had started and when the doors were open for the entrance of passengers, and either with a view of attracting the conductor's attention and inducing him to open the door and permit the plaintiff to enter, or in a moment of rage because the conductor would not open the door and permit him to enter, he drove his fist through the glass of the car and received the injuries for which he complains. Of course, if the accident occurred as related by the witnesses for the defense, the defendant and its employees were entirely free from any act of carelessness, and the injuries sustained by the plaintiff were the direct result of his own negligent acts, and he cannot recover. I think the verdict of the jury was palpably against the weight of the evidence, and that the same should be set aside and a new trial ordered, on the ground that the verdict of the jury, both upon the question of defendant's negligence and plaintiff's freedom from contributory negligence was against the weight of the evidence.

The judgment and order should be reversed and a new trial ordered, with costs to appellant to abide the event.

DOWLING and SMITH, JJ., concurred; CLARKE, P. J., and LAUGHLIN, J., dissented.

CLARKE, P. J. (dissenting):

I think a question of fact was presented which it was the province of the jury to determine. I do not at all agree that the evidence on the part of the defendant is the more probable. Parts of that evidence, even on the printed record, are to me unpersuasive, and the jurors who saw and heard the witnesses were of the same opinion. I dissent and vote to affirm.

LAUGHLIN, J., concurred.

Judgment and order reversed and new trial ordered, with costs to appellant to abide event.